[No. 28240. *En Banc.* September 4, 1941.]

*In the Matter of the Eligibility for Unemployment Benefits of* JOHN HENRY FOY *et al.*[1]

[1]Reported in 116 P. (2d) 545.

318

*The Attorney General* and *Lyle L. Iversen* and *William J. Millard, Jr., Assistants* (*Lawrence W. Thayer,* of counsel), for appellant.

*Richards, Conklin & Delle,* for respondent.

*Grosscup, Morrow & Ambler, amici curiae.*

BEALS, J.—John Henry Foy, Adolph Hepper, and Emanuel A. Hepper applied to the division of unemployment compensation for unemployment compensation benefits, alleging that they had been in the employ of Advance Aluminum Castings Corporation. After a ruling that the claimants were not eligible for benefits under the unemployment compensation act (Laws 1937, chapter 162, p. 574; Rem. Rev. Stat. (Sup.), § 9998-101 [P. C. § 6233-301] *et seq.*), the claimants appealed, and the question of the claimants' eligibility was heard by the statutory appeal tribunal, which, after taking testimony, made findings of fact and rendered its decision thereon in favor of the claimants. The employer then requested the commissioner of unemployment compensation and placement to review the action of the appeal tribunal, which the commissioner did, adding one finding to the effect that the employer had employed eight or more persons for twenty weeks within 1938, and affirmed the action of the appeal tribunal.

The employer then appealed from the decision of the commissioner to the superior court for Yakima county, where the case was heard upon the record, and a decision rendered, holding that claimants Adolph and Emanuel Hepper were entitled to receive benefits based upon the portion of the services which they had rendered to the employer while acting as managers,

but denying them benefits upon their employment as salesmen, and denying all benefits to claimant Foy. From the judgment of the superior court, the commissioner of unemployment compensation and placement (hereinafter referred to as the commissioner) has appealed to this court.

Error is assigned upon the refusal of the superior court to confirm the decision of the commissioner; upon the action of the superior court in reviewing the factual questions presented and, as contended by appellant, in substituting its judgment on the facts for that of the statutory tribunal. Error is also assigned upon the finding of the trial court that the claimants were not entitled to receive unemployment compensation benefits based upon all of the services which they performed for Advance Aluminum Castings Corporation (herein referred to as the employer).

Respondent moves to dismiss the appeal upon two grounds: That appellant has failed to comply with the rules of this court providing for the filing and serving of a statement of facts or bill of exceptions, and in certain cases preparing and filing an abstract thereof; and that the statute does not confer upon the commissioner, who is the sole appellant herein, any right of appeal to this court from a judgment of the superior court, such as that entered in the case at bar; respondent contending, as to the latter ground of its motion, that the commissioner was not aggrieved by the judgment of the superior court, which provided for the allowance of less unemployment benefits to the claimants herein than were awarded to them by the department.

As to the first ground for the dismissal of the appeal, above stated, the commissioner's record, which includes a stenographic transcript of the testimony taken before the department, and other matters pre-

sented to the department in connection with the claim, becomes a part of the record before the superior court, upon being filed therein after an appeal from the departmental ruling. *Reid v. Department of Labor & Industries,* 194 Wash. 108, 77 P. (2d) 589. The departmental record should be brought before this court as part of the transcript on appeal. Rule XIV of the Rules of the Supreme Court, 193 Wash. 18-a, provides for abstracting statements of fact, and has no application to transcripts on appeal. In the case at bar, there is no statement of facts before us, and apparently none was necessary. The motion to dismiss the appeal, as based upon the first ground above stated, is without merit.

The second ground relied upon by respondent, that the commissioner is not, under the law, entitled to appeal to this court from such a judgment as was entered by the superior court in this case, presents a more serious question.

The following portions of the act are pertinent to the question now under discussion:

Rem. Rev. Stat. (Sup.), § 9998-106 [P. C. § 6233-306] (h), reads as follows:

"APPEAL TO COURTS. Any decision of the commissioner or appeal tribunal in the absence of an appeal therefrom as herein provided shall become final thirty days after the date of notification or mailing thereof, and judicial review thereof shall be permitted only after any party claiming to be aggrieved thereby has exhausted his remedies as provided in sub-sections (c), (d), and (e) of this section. The commissioner shall be deemed to be a party to any judicial action involving any such decision, and shall be represented in any such judicial action by the Attorney General."

Section 9998-106 (i), after providing for appeals to the superior court, continues: "Appeal shall lie

from the judgment of the Superior Court to the Supreme Court as in other civil cases."

Rem. Rev. Stat., § 1716 [P. C. § 7290], the general statute relating to appeals to the supreme court, provides:

"Any party aggrieved may appeal to the supreme court in the mode prescribed in this title from any and every of the following determinations . . . "

The commissioner is a party to the proceeding. The question to be determined upon respondent's motion is whether or not he is an aggrieved party, and as such may appeal to this court from the judgment of the superior court.

The judgment of the superior court, from which the appeal has been prosecuted, denied all benefits to one claimant, and allowed the two others less benefits than the department awarded them. The fund, then, from which unemployment benefits are paid, was not depleted by the judgment of the superior court, in so far as it denied benefits, but will be called on to pay less by way of benefits to claimants than it was required to pay by the departmental ruling.

The effect of such a judgment of the superior court is twofold. In the first place, it denies the right of claimants to unemployment benefits; in the second place, it, in effect, denies to the state, acting through the commissioner, the right to collect contributions from the employer, based upon the salaries of the employees who are held to be without the scope of the statute. It cannot, then, be positively said that the judgment does not adversely affect the compensation fund.

In an action instituted by the state for the purpose of collecting contributions from an employer, based upon the salaries of certain employees, could it be held that a judgment of the superior court to the effect

that the contributions sought could not be collected for the reason that the employees referred to were not within the purview of the act, could not be brought before this court by appeal by the state, for the reason that, if the state could not collect the contributions, it could not be held liable to the employees for payment of benefits, and therefore was not aggrieved by the judgment? If such be the law, judgments of the superior court might finally determine, contrary to the decision of the commissioner, questions of the greatest importance arising under the act, without any opportunity being afforded to obtain a decision of this court on the matter.

In the preamble of the act (Rem. Rev. Stat. (Sup.), § 9998-102 [P. C. § 6233-302]), the legislature has declared the concern of the public with involuntary unemployment and the importance of legislation intended to lighten the burdens thereof. The preamble continues:

"Social security requires protection against this greatest hazard of our economic life. This can be provided only by application of the insurance principle of sharing the risks, and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, . . . The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, and that this act shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum."

It is the duty of the commissioner appointed as head of the department to administer the act in accordance with its terms. If it should be held that he is not

aggrieved by a judgment of the superior court in such a case as this, to the effect that certain claimants are not entitled to unemployment benefits under the act, it might transpire that several superior courts would hold that different classes of employees were not within the scope of the act, and after these judgments had become *res judicata* of the matters determined thereby, another superior court might hold that similar classes of employees were within the purview of the act. From such a judgment an appeal would lie on the part of the employer, and if on appeal by the employer this court should affirm the judgment of the superior court, it would seem that great injustice might result, as the employees whose rights were affected in the actions first referred to might find it difficult to obtain the relief which this court had later held they were entitled to under the act. Of course, the same injustice would in fact exist as to the classes erroneously denied the protection of the act, whether the act were subsequently correctly construed or not.

The commissioner, of course, has no personal interest in any action involving such official acts on his part as those with which we are here concerned. He is, however, vitally concerned with carrying out his duties in accordance with the terms of the statute, in fixing policies, in deciding questions which come before him, in collecting contributions from employers who are liable under the act to pay the same, and in paying to claimants such unemployment benefits as under the act they are entitled to receive.

As it should be conceded that, before the commissioner may appeal from such a judgment of the superior court as is now before us, the commissioner must be a party aggrieved by the judgment, we are

not concerned with cases which hold that only an aggrieved party may appeal to this court.

A public officer is required to obey a judgment of the superior court, and is protected in so doing. In cases where a statute expressly provides that a public officer may appeal to this court from a judgment of the superior court, the officer is not obliged to prosecute an appeal, and may accept the judgment of the superior court and follow it. Bearing in mind, however, the obligation of the commissioner, or state official occupying a similar responsible position, to establish, after careful consideration and with the advice of the attorney general, a statewide policy affecting many thousands of our citizens, the importance of procuring a decision of this court, construing the statute under which the officer is acting, and the terms of which he is endeavoring to carry out, is manifest. That principle has always been recognized by our state officials, who have by appeals sought decisions of this court on important questions of statutory construction. The commissioner is required to establish under the law a carefully coordinated statewide policy. His rulings are entitled to consideration, and under the law on some phases of matters upon which he acts, carry great weight.

Certainly, in conducting a statewide administration of such a statute as that now before us, it might well result in confusion and great disadvantage to the state, to employers, and to employees, if it should be held that the commissioner cannot, for some technical reason, bring before this court for final determination such a question as that presented in the case at bar. If the commissioner cannot by appeal present the question to this court, the decision of an important question may be indefinitely postponed, to the great prejudice of the public.

The commissioner is charged in law with the administration of the statute according to its terms. In proper cases he must pay benefits claimed, where the claims are well founded in law.

That the claimant may appeal is not a controlling factor. The expense of an appeal would often be prohibitive. There might be other reasons for a claimant failing to carry the litigation further.

We are convinced that it must be held that the commissioner has the right, as an aggrieved party, to appeal to this court from judgments of the superior court on matters of construction, interpretation, and application of the act, which judgments are contrary to the rulings of the commissioner in construing the act as applied to certain specific cases, and thereby secure a decision of this court upon such questions.

Respondent contends that several important departmental findings are either (1) based on contradictory evidence, or (2) supported by inadequate evidence, or (3) consistent with a relationship which would render the statute inapplicable as between respondent and the claimants. The second contention may properly be urged against departmental findings, but the argument that the findings are based upon contradictory evidence is beside the question, for the reason stated in our decisions cited below, and the argument that certain of the facts found are also consistent with a relationship which would render the statute inapplicable, concerns only the question of the correct legal conclusion to be drawn from the facts, and has nothing to do with the validity of the findings of fact as made before the department.

In our recent opinion, *In re St. Paul & Tacoma Lumber Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877, it was held that the administrative findings of fact entered in the course of the departmental proceeding

are conclusive upon review of a commissioner's ruling by the courts, unless not supported by substantial evidence in the record. It was held that the courts would review departmental rulings upon questions of law, and also examine the record for the purpose of determining whether, in connection with matters of fact, the action of the department should be held arbitrary or capricious. The later cases of *In re Farwest Taxi Service*, 9 Wn. (2d) 134, 114 P. (2d) 164, and *Virginia Mason Hospital Ass'n v. Larson*, 9 Wn. (2d) 284, 114 P. (2d) 976, are to the same effect.

In the case at bar, the employer appealed to the superior court from the decision of the commissioner. After a hearing, and of course based only upon the record as made before the department, the superior court filed a memorandum opinion, and thereafter entered a judgment containing certain findings of fact, the court concluding that claimants Adolph and Emanuel A. Hepper were entitled to benefits based upon their employment as division managers, but that all three appellants, as to their other contractual relations, dealt with respondent as independent contractors, and were not in respondent's employ within the meaning of the unemployment compensation act. The judgment entered by the trial court referred the matter to the commissioner, with directions to allow certain benefits to the Messrs. Hepper, and to refuse the claimants all other benefits under the act. The matter is now before us on appeal from the judgment of the superior court.

The case was submitted to the court below prior to the filing of our decisions above referred to, and the trial court not unnaturally entered its findings based upon the evidence, without giving to the findings entered before the department the weight to which this

court later held that they were entitled under the statute.

We have, then, before us no holding by the trial court that the findings of the department were not based upon substantial evidence, but we have simply the findings of the trial court, some inconsistent with those made by the department, which may show nothing more than that the trial court was of the opinion that the record indicated that the evidence preponderated against the department's findings.

Our attention is not called to anything in the record made before the superior court, which indicates that that court was at any time requested to make any findings other than those which it did enter. Apparently the court, in the light of its construction of the statute, reviewed the evidence in the record as made before the department, and made its own findings as to what it deemed the essential facts. In so far as these findings contradict the findings made before the department, the contradictions represent simply a difference of opinion as to the weight of the evidence. They do not indicate that, in the opinion of the trial court, the departmental findings with which the court disagreed were without adequate support in the evidence, or that the same were arbitrarily or capriciously entered.

We have before us for review the judgment of the superior court, not the rulings of the administrative tribunal. We can consider only errors alleged to have been committed by the superior court which are properly brought before us. There is no procedure by which this court may review directly any act or ruling of the administrative agency, save in connection with an appeal from a judgment of the superior court. Any appellant deeming himself aggrieved by any part of the administrative proceeding

must first present his complaint to the superior court, and from the ruling of that court an appeal will lie to this court.

So far as this record discloses, respondent did not present to the superior court the question of whether these administrative findings were properly entered under the rule of the *St. Paul & Tacoma Lumber Co.* case. Therefore, strictly speaking, we should not consider any question relative to the sufficiency of the evidence to support the findings.

In view of the fact that the complete record is before us, and that, at the time of the hearing before the superior court, our decisions above referred to had not been rendered, we shall consider the case as in all respects properly before us for review, and shall decide the matter on the merits, as disclosed by the entire record.

■ We have examined the lengthy findings of fact entered by the appeal tribunal of the department, in the light of our decision in the *St. Paul & Tacoma Lumber Co.* case, *supra.* We there said:

"Looking to the quoted portion of the act in question relative to appeals taken to the superior court, and having in mind our former decisions relative to statutes of this nature, we are constrained to hold that the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious."

In the same case we referred to a finding by the department, which the superior court had set aside, using the following language:

"In view of the foregoing, the findings by the department to the effect that the only reason for the unemployment of these men was their refusal to pass through the picket line established by the group which called the strike, should not have been reversed, since

there was substantial evidence upon which such findings were based and there was no indication that the commissioner acted arbitrarily or capriciously."

Each and every material departmental finding is supported by substantial evidence in the record. This being true, under the case cited, the findings are binding upon the courts.

The departmental findings of fact read as follows:

"The Advance Aluminum Castings Corporation is a large manufacturer and distributor of cast aluminum cooking utensils, with a home office in Chicago, Illinois, and selling organizations in several of the states including Washington. The sales organization in this state consists of a district manager with principal office in Seattle, division managers in charge of various territories assigned by the district manager, and distributors or salesmen making direct sales contracts under the supervision of the division managers.

"The corporation manufactures waterless method cooking utensils which require demonstration before sale, and includes a service consisting of instructions in the proper use of the utensils after delivery to the customer. Demonstration dinners are arranged by the distributors, lectures are given and appointments made to call on prospective customers. Sales are made for cash or on installment conditional sales contracts, according to regulations and for prices established by the corporation.

"A form of agreement is used by the corporation which prescribes the relationship and obligations of the parties thereto, and refers to the salesman as a distributor. By this agreement the corporation fixes the retail selling price of all goods and the commissions or discounts allowed distributors, provides for a conditional sales contract for deferred payments and fixes the minimum down payments, rents to the distributor a demonstration outfit and agrees to accept the conditional sales contracts of the customers in payment for goods ordered.

"The conditional sales contract required by the corporation, which is a combination order for goods and

promise to pay, purports to be an order for the distributor to deliver goods and includes an assignment by the distributor of all rights thereunder to the corporation. The ,contention of the corporation is that the distributor purchases their goods and resells them to the customer, using the assigned sales contract in payment therefor, and retains the down payment as his commission or discount.

"The corporation makes deliveries of goods directly to the customer, and does so only after the conditional sales contract has been approved and accepted by them. Thereafter, the corporation insists on a service call by the distributor to instruct the customer in the use of the goods, and the return to the corporation of a receipt for the service, signed by the customer, before the sale is consummated. Such service calls are required of the distributors but the corporation does not require similar calls on customers who purchase their goods through retail stores.

"The corporation had been, for several years prior to 1937, conducting the same business in the same manner except that the sales employees were classed and known as salesmen and an employer-employee relationship existed. Early in 1937 the corporation changed the wording of the contract of hire to substitute the name distributor where it had formerly contained salesman and added the assignment by the distributor to its conditional sales contract form. In all other respects the method of selling its goods remained identical, and no tenable explanation of the reason for changing was offered by the corporation.

"Several forms used by the corporation during the appellants' period of employment continued to refer to and direct 'salesmen' in their activities and no distinct change in the actual method of selling the goods, before and after 1937, was presented by the evidence.

"There is a great deal of testimony showing that the appellants were required to devote their full time to the corporation's interests, were supervised and controlled by the corporation, were required to attend weekly sales meetings, were required to submit a report of daily activities and number of hours worked, were required to follow the corporation's method of

selling (demonstrating at dinners, follow up calls and service calls) and obtain the established prices, did not carry a stock of goods or come into possession of goods at any time, had no capital invested nor a credit account established with the corporation, were required to memorize sales talks prepared by the corporation, and that the agreement could be terminated at any time by either party.

"The conditional sales contract forms used since 1937 contain the printed statement, 'Make FIRST PAYMENT ONLY to distributor at time contract is signed.' The chart of prices established by the corporation gave the customer a discount of 20% of the retail price as a premium if she bought on the first call by the distributor and fixed a higher price if additional sales efforts were necessary to complete a sale. The distributor was not permitted to keep the additional 20% when two or more calls were necessary to secure an order and the corporation received the greater proceeds therefrom.

"The following entry appears on the weekly report of the district manager to the corporation on July 8, 1939. 'A. Hepper. Is out by Reports.' The failure to report brought about the termination of this appellant's agreement. The corporation stated in letters to the appellants that certain commissions would not be paid due to certain defaults in payments by customers. Distributors were asked to follow up delinquent accounts and bring them to a current status, after conditional sales contracts were accepted by the corporation. An additional 5% commission was paid the distributor by the corporation as and when cash conditional sales contract was paid in full.

"At no time was a distributor permitted to receive or have in his possession any goods sold on a conditional sales contract. The rental provision in the agreement for use of the demonstration outfit was not enforced by the corporation. A series of sales promotion letters was sent out by the corporation, and division managers were continually in touch with the distributors to supervise and assist them, demand more production, and conduct regular weekly meetings.

"The only orders for goods submitted by the dis-

tributors to the corporation were those obtained from customers and were subject to the approval of the corporation through acceptance of the conditional sales contract. Sales for cash were extremely rare, and when full payment was obtained the orders were taken on the same form and goods were shipped directly to the customer. In some instances the distributors did not sign the assignment. A territory to which a distributor must confine his efforts was assigned by the corporation. Appellants did not purchase goods from the corporation, were not financially able to do so, were not required to make any investment or establish financial responsibility, and were required to devote full time to the business of the corporation. The corporation did not permit the distributors to sell other products."

The trial court was of the opinion that the record contained evidence concerning relevant matters in connection with which the department had entered no findings whatever, and as to such questions the trial court made and entered its own findings. We see no reason why the trial court, under such circumstances, should not make findings based upon substantial and uncontroverted evidence in the record, and concerning which no findings were entered before the department. Such judicial findings are proper where the facts found are material to the issues, and do not contradict findings made by the administrative agency. *Virginia Mason Hospital Ass'n v. Larson,* *supra.* The findings made by the trial court which should be considered on this appeal read as follows:

"The company agrees to act as collecting agent for the distributor where the full down payment is not received by him, and to either remit the same to the distributor or apply it to any balance such distributor may owe the company at the time of the receipt thereof. . . . The company agrees to provide lecture gifts to the distributor at special prices fixed by the company. The distributor agrees that he will not, at any time or under any circumstances, sign the name of

the company to any sales contract, agreement, letter, obligation, or receipt. . . . The distributor may not assign or transfer his interest in the contract without the consent of the company. . . .

"The company did not furnish any distributor with an expense account; the company did not pay any distributor a salary nor allow him a drawing account. The company did not furnish any distributor with office facilities, nor permit him to maintain an office. The company did not furnish any distributor with business cards, nor any other similar evidence tending to show that he was a representative of the company in the sale of its goods. The company did not furnish the distributor with stamps or money for postage. The company did not permit the distributor to sign the company's name to any sales contract. The company did not in any way restrict or attempt to restrict the customers to whom sales could be made. The distributor paid all his own operating expenses without any reimbursement. The distributor purchased display merchandise from the company and paid for same out of his earnings. . . . The distributor could employ assistants, under his sole control and compensated by him."

Upon the record before us, the controversy should be determined upon the two series of findings of fact above quoted. So far as the record shows, the trial court was not requested to make any other or further findings.

What we have said disposes of appellant's second and third assignments of error.

■ Appellant first assigns error upon the failure of the trial court to

" . . . confirm the decision of the commissioner after having failed to find either that the commissioner had exceeded his authority or incorrectly construed the law."

Rem. Rev. Stat. (Sup.), § 9998-106 (i), reads in part as follows:

"If the court shall determine that the commissioner has acted within his power and has correctly construed the law, the decision of the commissioner shall be confirmed; otherwise, it shall be reversed or modified."

On appeal to the superior court, that court entered a judgment modifying the commissioner's decision. Such a judgment includes an implied finding that the commissioner had acted beyond his power, or had incorrectly construed the law. The court is not required to enter an express finding to that effect.

Finally, appellant contends that the trial court erred in modifying the order of the commissioner, and in holding that claimants were not entitled to receive unemployment compensation benefits as to all of their services as performed for respondent.

The trial court was of the opinion that claimants, acting as distributors or salesmen for respondent, were not in respondent's "employment," within the meaning of the unemployment compensation act. In support of this decision, respondent argues that, as between claimants and respondent, the common-law relationship of master and servant did not exist, and that the unemployment compensation statute intended to operate only upon persons occupying a relationship equivalent to the relation of master and servant at common law.

Rem. Rev. Stat. (Sup.), § 9998-119a [P. C. § 6233-317] (g) (1), reads as follows:

" 'Employment,' subject to the other provisions in this sub-section, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

In so far as the case before us is concerned, this section may be condensed to read as follows: Employ-

ment, subject to the other provisions in this subsection, means service performed for wages.

By Rem. Rev. Stat. (Sup.), § 9998-119a (m), wages are defined as follows:

" 'Wages' means the first three thousand dollars of remuneration payable by one employer to an individual worker for employment during any calendar year. 'Remuneration' means all compensation payable for personal services, including commissions . .. . "

Claimants herein performed personal services pursuant to their respective contracts with respondent. Their remuneration was by way of commissions on the sales which they made. Under the sections of the statute above quoted, claimants rendered to respondent "services . . . performed for wages," within the scope of the statute. If the relationship of A to B brings A within the scope of § 9998-119a (g) (1), the exact phrase used to define the relationship, at common law or otherwise, would seem unimportant. The matter with which courts are concerned in considering cases arising under the act, is the existence or nonexistence of the statutory relationship. The statutory definition of "employment" is specific, and is not concerned with any other relationship, whether master and servant, or employer and employee, or independent contractor. It must be held, then, that "subject to the other provisions" referred to in § 9998-119a (g) (1), claimants were in the employment of respondent.

The other provisions of the act, which must be considered in determining the question here presented, are found in Rem. Rev. Stat. (Sup.), § 9998-119a (g) (5), which reads as follows:

"(5) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commissioner that:

"(i) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business, of the same nature as that involved in the contract of service."

Respondent argues that § 9998-119a (g) (5) in effect codifies and restates the common-law tests for determining the existence of the relationship of independent contractor, leaving only the common-law relationship of master and servant as within the purview of the act, and excluding therefrom all other common-law relationships of employment. In this connection, respondent cites our opinion in the case of *Washington Recorder Pub. Co. v. Ernst,* 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667, which contains certain expressions which tend to support respondent's position.

In the recent case of *Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995, we quoted with approval from the case of *McDermott v. State,* 196 Wash. 261, 82 P. (2d) 568,

" 'The parties are brought within the purview of the unemployment compensation act by a definition more inclusive than that of master and servant.' "

A number of authorities from other states were cited in support of our statement that the language quoted from the *McDermott* case was in accord with the weight of authority. In the *Mulhausen* case, referring to § 9998-119a (g) (5), we said:

"Almost without exception, the courts dealing with this definition of employment have approved not only

the holding, but also the above-quoted language in the *McDermott* case; and have held that 'employment' must be deemed to exist unless the person challenging such relationship establishes all three elements defined in subds. (i), (ii) and (iii)."

Several recent decisions from other jurisdictions have been cited and thoroughly reviewed in the briefs of counsel for the respective parties to this proceeding and in the briefs filed by *amici curiae*. While recognizing the divergent views of different courts upon this question, we are convinced that our statute was correctly construed in the *Mulhausen* case.

It must be held, then, that claimants are within the purview of the act, unless from the record it should be held that the existence of all three of the elements defined in subdivisions (i), (ii), and (iii), have been established.

Subdivision (i) concerns the matter of control or direction in the performance of the services. From the findings of the appeal tribunal, it appears that respondent, the employer, exercises a very definite control over claimants and persons similarly situated, as shown from the following extracts from the findings:

"The corporation fixes the retail selling price of all goods and the commissions or discounts allowed distributors, . . . and fixes the minimum down payments. . . .

"The corporation makes deliveries of goods directly to the customer, and does so only after the conditional sales contract has been approved and accepted by them. Thereafter the corporation insists on a service call by the distributor to instruct the customer in the use of the goods, and the return to the corporation of a receipt for the service, signed by the customer, before the sale is consummated. . . .

"The appellants were required to devote their full time to the corporation's interests, were supervised and controlled by the corporation, were required to attend weekly sales meetings, were required to submit

a report of daily activities and number of hours worked, were required to follow the corporation's method of selling (demonstrating at dinners, follow up calls and service calls) and obtain the established prices . . . were required to memorize sales talks prepared by the corporation . . .

"Division managers were continually in touch with the distributors to supervise and assist them, demand more production, and conduct regular weekly meetings. . . .

"A territory to which a distributor must confine his efforts was assigned by the corporation. Appellants did not purchase goods from the corporation. . . . The corporation did not permit the distributors to sell other products."

The arrangement between respondent and claimants does not call for a sale of respondent's products to claimants, but merely requires claimants to sell respondent's goods under detailed supervision by respondent and under a definite and precise control of claimants' selling activities.

Sales made by claimants under written contract of conditional sale include an assignment by the distributors (claimants) of all rights thereunder to respondent. Such an arrangement differs little from a sale effected by an agent directly on behalf of its principal.

On the record before us, it must be held that the claimants, acting as distributors under their agreements with respondent, were not free from control or direction by respondent over the performance of the service they were rendering to respondent, both under their contracts of service and in fact.

As the record shows that respondent has failed to establish the first of the three elements defined in Rem. Rev. Stat. (Sup.), § 9998-119a (g) (5), it follows that claimants are within the protection of the statute.

*Amici curiae,* taking respondent's view of the law applicable to the facts of the case at bar, have filed a

series of able and exhaustive briefs, arguing, *inter alia*, that the legislative history of the unemployment compensation act (Laws 1937, chapter 162, p. 574 *et seq.*) sustains respondent's position, and that this court, after studying and considering the history of the act as introduced, considered, amended, and finally enacted into law, should construe the act in the light of such legislative history, and that such construction would lead to the conclusion that respondent's contentions should be sustained.

We have considered the arguments so forcefully presented, but after careful consideration we find nothing in the legislative history of the act which induces us to place upon the act a construction different from that which we have heretofore placed thereon.

The judgment appealed from is reversed and the cause remanded, with instructions to confirm the final order entered by the department.

MAIN, BLAKE, JEFFERS, and DRIVER, JJ., concur.

SIMPSON, J. (dissenting)—In my opinion, the majority incorrectly overruled respondent's motion to dismiss this appeal.

In order to make clear my position concerning the precise question involved, I briefly review the facts: (1) Three claimants applied for unemployment compensation benefits, alleging former employment with respondent; (2) from an adverse departmental ruling, claimants appealed to the statutory tribunal which held in their favor; (3) at respondent's request, the commissioner reviewed the tribunal's decision which he affirmed; (4) respondent then appealed to the superior court where judgment was rendered (a) denying benefits to one claimant and (b) reducing the amount awarded the other two; (5) from this judgment, claimants failed to appeal, appeal was

undertaken by the commissioner; and (6) respondent moved to dismiss the appeal on the ground that the statute does not confer any such right because the commissioner is not an aggrieved party in the cause.

Thus, the anomalous situation of the commissioner "pinch-hitting" for claimants (each capable himself), and appealing from a judgment awarding *less* benefits than heretofore allowed, is presented.

That the right of appeal is statutory, existing only when expressly provided, and cannot be extended to cases without the statute, is clearly established. *Puget Sound Agricultural Co. v. Pierce County,* 1 Wash. Terr. 76; *Lanigan v. Miles,* 89 Wash. 6, 153 Pac. 1081; *Robison v. LaForge,* 170 Wash. 678, 17 P. (2d) 843; *Von Herberg v. Nelson,* 175 Wash. 572, 27 P. (2d) 1103; *Albrecht v. Department of Labor & Industries,* 192 Wash. 520, 74 P. (2d) 22.

Rem. Rev. Stat. (Sup.), § 9998-106 (i), contains the following provision:

"Appeal shall lie from the judgment of the Superior Court to the Supreme Court as in other civil cases. . . . "

The provision relative to appeals in civil cases is Rem. Rev. Stat., § 1716, which reads in part:

"*Any party aggrieved* may appeal to the supreme court in the mode prescribed in this title from any and every of the following determinations, . . . " (Italics mine.)

Obviously, therefore, the commissioner of unemployment compensation has no status as an appellant unless he may be considered an "aggrieved party."

Hence, what is understood by the term "aggrieved party"? In *Elterich v. Arndt,* 175 Wash. 562, 27 P. (2d) 1102, we granted a motion to dismiss an appeal, stating:

"The record fails to disclose that, as an individual, the appellant has a substantial interest in the subject matter of the litigation, or that, as an individual, he was aggrieved or prejudiced by the temporary restraining order. A person can have no standing to appeal unless he has a substantial interest in the subject matter of the litigation and is aggrieved or prejudiced by the judgment or decree.

" 'And not only must a party desiring to appeal have an interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. . . .

" 'In addition to the requirement of a substantial interest in the subject-matter of the litigation, it is essential, in order that a person may appeal or sue out a writ of error, that he shall be aggrieved or prejudiced by the judgment or decree; appeals are not allowed for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct errors injuriously affecting the appellant. The record must show that the party complaining was aggrieved by the judgment, as a reviewing court cannot hear evidence to determine that question. The damage or grievance which entitled a party to a writ of error or an appeal, within this rule, must be a direct and positive one, effected by the judgment concluding and acting upon his rights; and such damage must be by the record, and not in consequence of it. Persons aggrieved, in this sense, are not those who may happen to entertain desires on the subject, but only those who have rights which may be enforced at law, and whose pecuniary interests might be established in whole or in part by the decree; in other words, the mere fact that a person is hurt in his feelings, wounded in his affections, or subjected to inconvenience, annoyance, discomfort, or even expense by a decree, does not entitle him to appeal from it, so long as he is not thereby concluded from asserting or defending his claims of personal or property rights in any proper court.' 2 R. C. L. p. 52."

Again, in *Terrill v. Tacoma,* 195 Wash. 275, 80 P. (2d) 858, we stated:

"The rule concerning the question of the right of appeal as presented in the case at bar is set out in 2 Am. Jur., Appeal and Error, 941, 943, §§ 150 and 152, as follows:

" 'A cardinal principle which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have an interest in the subject-matter of the litigation. His interest must be immediate and pecuniary, and not a remote consequence of the judgment; a future, contingent, or speculative interest is not sufficient.

" 'The interest must also be substantial; a merely nominal party to the action cannot appeal.'

" 'In addition to the requirement of a substantial interest in the subject-matter of the litigation, it is essential, in order that a person may appeal or sue out a writ of error, that he shall be aggrieved or prejudiced by the judgment or decree. Appeals are not allowed for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct errors injuriously affecting the appellant.' "

With the foregoing in mind, we have the precise question involved: Where unemployment compensation benefits are awarded but thereafter reduced by a judgment of the superior court, claimants never appealing therefrom, is the commissioner an *aggrieved* party in the cause enabling him to appeal?

As stated before, under these *peculiar* facts, I am unable to hold that the commissioner is an aggrieved party. In the first place, a sharp distinction must be drawn between an appeal by the commissioner from (1) a judgment which diminishes the compensation fund, and (2) a judgment which prevents a decrease in the fund. In the former, the commissioner as trustee of the fund has a duty to see that benefits are not prodigally or mistakenly awarded. While in the latter, he is not charged with a duty to act. This responsi-

bility belongs to claimants. To continue the litigation is a matter entirely within their discretion.

The majority has not cited any authority, nor have I been able to find any, which requires a custodian of a fund to prosecute an appeal on behalf of a claimant against such fund where the claimant himself possesses the right of appeal, or where he may believe that the claimant has a just claim. That one's feeling of propriety or sense of justice is outraged by the decree of a lower court does not make him aggrieved within the meaning of the statute. See *Appeal of Spencer,* 122 Conn. 327, 332, 188 Atl. 881, 883.

To recapitulate, in situation (1) the commissioner as trustee of the unemployment compensation fund is delegated the duty at the expense of the state to cautiously and judiciously administer the disbursement of funds. But in situation (2) *he is not charged with the duty of establishing claims at state expense in behalf of claimants possessing the right of appeal,* and hence is not aggrieved by the reduction in the amount of benefits.

Then, too, the commissioner was in no legal sense a party asserting rights which, if granted, would be beneficial to his department; and a decision adverse to his own views would not lessen, impair, or destroy any of the department's rights. Under circumstances such as these, the only aggrieved parties were claimants. Because they failed to take advantage of their opportunity, by what authority and by what reasoning does such right of appeal inure to the commissioner?

As observed in the majority opinion, there is a dearth of authority on this particular question. By resorting, however, to other related situations expounding analogous principles and reasoning, the above analysis appears to be well-established.

In *Appeal of Woodbury,* 70 Conn. 455, 39 Atl. 791, an appeal was taken by a trustee in insolvency of an estate from the denial of a motion to extend the time in which claims might be made against the estate. In denying the trustee the right to appeal, the court stated:

"The appellee in this court argues that if the trustee, under certain circumstances, as shown by some of the cases hereinbefore cited, can appeal from an order extending the time for presenting claims, there is no reason why he should not have the right to appeal from an order refusing to extend the time. The two cases are not analogous. In the former he is acting in the interest of the debtor and of all the creditors whose standing, as such, is undisputed, in a case where it is his duty to act in favor of a speedy and economical settlement; while in the latter he is charged with no duty to act, and is acting, if he acts at all, in favor of delay at the expense of the estate, in the interest of one or more parties whose standing as creditors is still in dispute.

"A trustee may appeal from the allowance of a claim by the commissioners, but it does not follow from this that he can appeal from their action in disallowing a claim. In the one case he may be aggrieved in his representative capacity because it may be his duty, at the expense of the estate, to oppose the claim; in the other he is not charged with the duty of establishing the claim at the expense of the estate, and is not aggrieved in his representative capacity by its disallowance.

"So far as we are aware the practice, in cases of this kind, has always been in accordance with the views herein expressed. The creditor himself has ample power to protect his rights, and we see no good reason why he should call upon the trustee to do this for him at the expense of others. For these reasons we are of opinion that the court below erred in denying the motion to erase."

In *Kirchoff v. Board of County Commissioners,* 189 Minn. 226, 248 N. W. 817, petitioner applied to the

county board to have his land set off from one school district and attached to another. After a hearing, the board denied the petition. Petitioner appealed to the superior court which reversed the board's order. The board then appealed. In dismissing the appeal, the court said:

"The county board, prosecuting this appeal, as far as the record shows, has no interest in the litigation and is not an aggrieved party. The board is the tribunal designated by statute to hear the petition and pass upon it in the first instance. The litigants are the petitioner and the school districts affected. A court or tribunal before whom a controversy is litigated has as such no appealable interest in the matter. And, while the county board represents the county in many matters in which the county is interested, it does not appear that the county has any financial or other interest in this litigation, nor is the appeal taken by or in behalf of the county. Public boards and officers cannot appeal or sue out writs of error if they have no interest or are not aggrieved either in their official or individual capacity. [Citing authorities.]"

Again, in *Clark v. Hill*, 208 Wis. 575, 243 N. W. 502, petitioners, proprietors of a carnival, applied to the commissioners of agriculture and markets for a showman's license, tendering a certain sum. The license was refused because the commissioners construed a section of the statute as requiring a greater amount. Thereafter, petitioners sought to procure a peremptory writ of mandamus compelling defendants to issue them a license for the sum tendered. A trial resulted in a judgment in all respects favorable to defendants and denying the writ. From this judgment in favor of defendants, they appealed because of the construction accorded to the statute by the lower court. In passing on the question, the court remarked:

"In view of the fact that the judgment denied the petitioners the relief sought, or any relief, it is not a

judgment by which the defendants are aggrieved. The right to appeal to this court is accorded to any *party aggrieved* by the provisions of sec. 274.10, Stats. Unless the party is aggrieved by the judgment, even though he challenges the reason upon which the judgment is based, he has no right to appeal. [Citing cases.] As the defendants here are not parties who may appeal from the judgment, because they are not aggrieved, the judgment of this court must be a dismissal of the appeal."

In addition, the position of the commissioner as trustee of the compensation fund with respect to the aggrieved party question is not fundamentally different from that of an executor or administrator seeking to appeal from a decree of distribution. In the latter, the courts have uniformly held that persons in such capacities are not aggrieved parties within the meaning of appeal statutes in contests between claimants of an estate over a decree of distribution. *In re Babb's Estate,* 200 Cal. 252, 252 Pac. 1039; see, also, *In re Cannons' Estate,* 18 Wash. 101, 105, 50 Pac. 1021, 1022.

A still closer and more apt analogy to the present position of the commissioner, i. e., appealing from a judgment partially reversing his allowance of a claim for benefits, is that of an administrator or executor appealing from a judgment or order disallowing a claim which the administrator has allowed. Under such circumstances, it is generally held that, since the representative is a mere volunteer, possessing no appealable interest, he is not an aggrieved party and thus cannot appeal. 24 C. J. 411, § 1130; *Foster v. Newman,* 192 Ark. 1177, 90 S. W. (2d) 224; *Crenshaw v. Sanford,* 14 Ariz. 1, 123 Pac. 31.

In *Cairns v. Donahey,* 59 Wash. 130, 109 Pac. 334, this court held that an appellant, in order to obtain a review of an order or decree, must have an interest in the subject matter of the appeal. In the case at

bar, the subject matter of the appeal is the amount claimed by the workmen in which the commissioner has no interest whatever.

A reading of the majority opinion discloses four reasons for overruling respondent's motion to dismiss the appeal. In the first place, it is argued that, since the judgment adversely affects the compensation fund by denying the commissioner the right to collect contributions from respondent, he is an aggrieved party. Mercenarily speaking, it might be stated that, while the fund is adversely affected by a decrease in contributions, it is, on the other hand, favorably affected by a reduction in benefits. However, such reasoning is decidedly irrelevant. We are not concerned here with the collection of contributions. This is an action by claimants seeking to acquire unemployment compensation benefits for their individual use, not one by the commissioner against respondent for taxes or contributions. Hence, the effect of collecting contributions from respondent is an issue not before the court at the present time.

Second, the majority argue that, if the commissioner is denied the right of appeal, the superior courts will be administering the act. Perhaps that conclusion follows from their broad generalization. However, such a sweeping proposition was never advanced. As pointed out before, the commissioner's right of appeal in general is not being disputed. It is only this exceptional situation that is being attacked.

Third, the majority next contend that, because the commissioner is vitally concerned in carrying out his duties in accordance with the statute, in fixing sound policies and in establishing departmental rulings, he should be allowed the right of appeal. While these intentions are exceedingly admirable, fortunately or unfortunately this is a matter for the legislature and

not for the courts. Moreover, this argument does not relate to whether or not the commissioner is an aggrieved party.

Finally, as an additional reason for permitting the commissioner to appeal, the majority contend that, as the expense is often prohibitive to claimants, further litigation would be discouraged. Again, this argument is one for the legislature. However, in this instance, the legislature has expressly provided that claimants shall not be charged fees of any kind for departmental hearings, that they shall pay only such fees as are legal in the superior and supreme courts, and that counsel fees shall be determined by the court. Rem. Rev. Stat. (Sup.), § 9998-115 [P. C. § 6233-316] (b).

The motion to dismiss the appeal should be granted.

ROBINSON, C. J., and STEINERT, J., concur with SIMPSON, J.