[No. 59877-1.   En Banc.   July 8, 1993.]

KAISER ALUMINUM & CHEMICAL CORPORATION, *Respondent,*
v. THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent,* THE BOARD OF INDUSTRIAL
INSURANCE APPEALS, *Appellant.*

*Christine O. Gregoire, Attorney General,* and *Sarah J. Coats* and *Paul L. Gaughen, Assistants,* for appellant.

*Eisenhower & Carlson,.* by *Richard A. Jessup,* for respondent Kaiser Aluminum.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for respondent State.

UTTER, J. — In this certified appeal, the Board of Industrial Insurance Appeals (Board) challenges a superior court decision reversing the Board's decision fixing interest on a workers' compensation award. Respondent Kaiser Aluminum & Chemical Corporation (Kaiser) defends the Superior Court's decision and additionally contends that the Board has no authority to pursue this appeal. The appeal is dismissed, inasmuch as we conclude the Board does not have the statutory authority to prosecute this appeal.

I

In May of 1985, steelworker Garland G. Waage (Waage) was injured in the course of his employment with Kaiser and was unable to continue working.[1] He reported his injuries to Kaiser and to the Department of Labor and Industries (Department) along with a claim for workers' compensation benefits. Initially, Kaiser contested Waage's claim, asserting that Waage's inability to work was unrelated to the accidents at the Kaiser

---

[1] The precise nature of the injuries suffered by Waage is not relevant to this appeal.

facility. The Department determined that Waage's injuries were in the course of his employment and that he had suffered a "total temporary disability". Waage was therefore entitled to workers' compensation in the amount of $22,786.88.

While the workers' compensation claim was being processed by the Department, Kaiser paid Waage disability benefits under its sickness and accident benefits policy. This policy, established as part of Kaiser's collective bargaining agreement with the United Steelworkers of America, provided for the payment of nonoccupational disability benefits to any employee who became totally disabled as a result of sickness or accident.

The sickness and accident benefits were not intended to overlap with workers' compensation payments. Generally, employees who suffered injuries at work were to be covered by workers' compensation rather than the sickness and accident benefits. If an employee was incorrectly paid sickness and accident benefits instead of workers' compensation, the policy provided:

> In the event you [the employee] receive non-occupational sickness and accident benefits and also file a claim for Workers' Compensation and receive such benefits, you must make restitution of the appropriate portion of the non-occupational sickness and accident benefits.

Policy, at 8. Thus, the policy required that nonoccupational disability benefits paid under the policy would be returned to Kaiser if it was later determined that the disability in question was in fact work related. This provision prevented employees from "double-dipping", *i.e.*, receiving *both* sickness and accident benefits and workers' compensation.

Over the period in question, June 1985 to May 1987, Kaiser paid Waage a gross total of $22,559.29 in sickness and accident benefits. See Clerk's Papers, at 40. Of this amount, $19,220.85 was in cash and $3,338.44 was in the form of Kaiser stock. Of the total $22,559.29, Kaiser withheld $4,176.42 for Social Security taxes and federal income withholding taxes. Waage thus received a total of $18,382.87 from Kaiser in the form of sickness and accident benefits.

Kaiser sought Board review of the Department's determination, continuing to argue that Waage's inability to work was unrelated to his accidents at work. The Board affirmed the Department's determination and upheld the award of workers' compensation benefits. The Board also determined Waage might be entitled to interest payments on the portions of his workers' compensation award which remained unpaid. In order to calculate any interest which was due, the Board requested information from Waage and Kaiser on the amounts of any payments which had already been made.

On January 24, 1990, the Board issued an order fixing interest on the unpaid portions of Waage's workers' compensation award. See Clerk's Papers, at 1. In fixing interest, the Board did not consider the sickness and accident benefits which had been paid by Kaiser. Instead, the Board treated Waage's workers' compensation as completely unpaid during the period in question. On this basis, the Board awarded Waage $3,377.03 in interest.

Kaiser appealed to the Superior Court for Pierce County. It contended that the sickness and accident benefits should be treated as "advance payments" on the workers' compensation award and therefore interest should have been calculated only on the difference between the sickness and accident benefits already paid and the workers' compensation award. This difference was $4,404.01.[2]

On September 17, 1991, the Superior Court heard argument from representatives of Kaiser and the Board. (Waage, at this stage, was no longer participating in the proceedings.) On October 11, the court issued an order reversing the decision of the Board and remanding for redetermination of interest on the basis of Kaiser's calculations. The court reasoned that interest is due only to compensate injured workers for delay in the receipt of benefits and that in this case there had been no delay, at least to the extent of the payment of the sickness and accident benefits. See Superior Court Findings of Fact and Conclusions of Law, at 6.

---

[2]The record does not reveal what interest on the $4,404.01 would be. Presumably, however, it would be substantially less than the $3,377.03 awarded by the Board.

The Board appealed, and the Court of Appeals certified the case to this court pursuant to RCW 2.06.030. We accepted certification on November 25, 1992.

## II

Prior to reaching the question of the interest calculation, we first consider the argument of Kaiser and the Department that the Board does not have the authority to bring an appeal of a superior court judgment reversing the Board's decision fixing interest. Because we conclude the Board does not have such authority, it is unnecessary for us to reach the question of the propriety of the interest calculation.

## A

■ Analysis of the Board's authority to bring this appeal begins with the principle that " '[a]dministrative agencies are creatures of the legislature without inherent or common-law powers and may exercise only those powers conferred either expressly or by necessary implication' ". *State Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 125, 641 P.2d 163 (1982) (quoting *State v. Munson*, 23 Wn. App. 522, 524, 597 P.2d 440 (1979)). *Accord, Municipality of Metro Seattle v. Public Empl. Relations Comm'n*, 118 Wn.2d 621, 633, 826 P.2d 158 (1992). Thus, the question of the Board's authority to appeal a superior court decision rests entirely upon whether such an authority is expressly granted by the Board's enabling legislation or is necessarily implied.

The Board's enabling legislation is contained in RCW 51.52, a chapter of the Industrial Insurance Act (Act). Nothing in this legislation explicitly grants the Board the authority to appeal superior court decisions like the one in this case. *See generally* RCW 51.52. Consequently, if the Board has such an authority, it must be necessarily implied. Consideration of the provisions of the statute, its history, public policy, and decisions from other jurisdictions convinces us that the Board's right to appeal in this case is not implied in the Act.

■ While the question of the Board's authority is ultimately statutory, there are general principles of administra-

tive law which are relevant to this issue. The Board is a quasi-judicial administrative agency rather than an enforcement or "front-line" agency. The basic administration of the Act is performed by the Department, whereas the function of the Board is to hear appeals, as an independent tribunal, from decisions made by the Department. *See* RCW 51.52-.050; WAC 263-12-010. In performing its function, the Board is authorized to promulgate rules for its hearings, RCW 51.52.020, to initiate contempt proceedings, RCW 51.52.100, and to award interest on awards upheld on appeal, RCW 51.52.135(3). We recognized the quasi-judicial character of the Board soon after the Board's creation in 1949. *See, e.g., Department of Labor & Indus. v. Cook*, 44 Wn.2d 671, 677, 269 P.2d 962 (1954); *Lewis v. Department of Labor & Indus.*, 46 Wn.2d 391, 397, 281 P.2d 837 (1955).

■ Quasi-judicial agencies, as opposed to enforcement or "front-line" agencies, are generally not permitted to bring appeals of adverse court decisions. 4 Am. Jur. 2d *Appeal and Error* § 234 (1962); *see also Maryland Real Estate Comm'n v. Johnson*, 320 Md. 91, 96-97, 576 A.2d 760, 762-63 (1990); *Philadelphia Bd. of Pensions & Retirement v. Pearlman*, 137 Pa. Commw. 146, 151-52, 586 A.2d 466, 468, *appeal denied*, 529 Pa. 627 (1991).

Courts have typically given two reasons for this rule. First, quasi-judicial agencies may be analogized to lower courts. Since a lower court ordinarily has no right to appeal a reversal of its decision by a higher court, an administrative agency acting in a judicial capacity is deemed to have no right to appeal a reversal of its decision by a reviewing court. *See, e.g., Board of Zoning Appeals v. McKinney*, 174 Md. 551, 562-63, 199 A. 540, 545, 117 A.L.R. 207 (1938); *In re Morgantown*, 159 W. Va. 788, 794, 226 S.E.2d 900, 904 (1976).

Second, allowing a quasi-judicial agency to enter proceedings as a partisan may compromise the impartiality of that body in rendering its decisions. *See, e.g., Speck v. Zoning Bd. of Appeals*, 89 Ill. 2d 482, 486, 433 N.E.2d 685, 687 (1982);

*In re Highland Holiday Subdivision*, 27 Ohio App. 2d 237, 239, 273 N.E.2d 903, 905 (1971). As stated by one court:

> [T]he appearance of the Commission before this court in an adversary posture on behalf of the litigant which appeared before it, completely destroys the impartial character of the Commission as a tribunal where justice to both . . . should be meted out an even-handed basis.

*Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 383, 573 P.2d 69, 74 (Ct. App.), *approved and adopted*, 117 Ariz. 342, 572 P.2d 804 (1977).

There are two common exceptions to the general principle that a quasi-judicial agency does not have authority to appeal court decisions reversing the agency's decisions. First, quasi-judicial agencies have interests in preserving the integrity of their decisionmaking process and therefore have authority to appeal decisions regarding the agency's procedures. In *Milford v. Local 1566, Coun. 4, AFSCME*, 200 Conn. 91, 510 A.2d 177 (1986), for example, the Connecticut Supreme Court allowed a quasi-judicial agency to bring an appeal regarding whether its members were required to take an oath during hearings. The court recognized that the question concerned the board's statutory responsibility to conduct its proceedings and was therefore appealable. 200 Conn. at 96-97.

Second, where a quasi-judicial agency has nonjudicial authority to enforce or administer policy, it is allowed to appeal court decisions regarding the implementation of this executive or legislative authority just as an ordinary enforcement administrative agency would. *See, e.g., Johnson*, at 97; *County Comm'rs v. Gross*, 301 Md. 473, 478-79, 483 A.2d 755, 757-58 (1984). For example, if a zoning board has authority to promulgate zoning codes as well as to hear zoning appeals, it is generally permitted to bring appeals of court decisions regarding the zoning codes. The mere fact that an agency operates principally in a quasi-judicial capacity does not bar it from bringing court appeals where the appeal concerns a nonjudicial authority of the agency.

Our case law is in agreement with these general principles. In *In re Foy*, 10 Wn.2d 317, 116 P.2d 545 (1941), this court upheld the authority of the Commissioner of unemployment compensation to appeal an adverse superior court judgment, despite the fact that the Commissioner operated at times in a judicial capacity. In addition to the Commissioner's judicial duties, however, he was also the administrative head of the unemployment compensation division and was responsible for paying benefits. 10 Wn.2d at 323-24. Thus, the *Foy* decision represents an application of the "executive or legislative authority" exception to the general rule against appeals by quasi-judicial agencies.

## B

These general principles provide a background for the analysis of a question which is essentially statutory. The Board presents two principal arguments that its authority to bring this appeal should be necessarily implied from the Act. First, the Board notes that RCW 51.52.140 provides:

> Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases. *The attorney general shall be the legal advisor of the department and the board.*

(Italics ours.) RCW 51.52.140. The Board reasons that the Legislature would not have designated the Attorney General as the Board's legal adviser if the Board was not granted the general authority to bring appeals.

While the Board's argument has some force, the reference to RCW 51.52.140 is inconclusive. The Attorney General may have been designated as the Board's representative for a number of reasons unrelated to bringing appeals such as this one. As discussed above, a quasi-judicial agency like the Board would generally have authority to appeal other issues, such as those regarding its internal procedures, and the Attorney General may have been designated as the Board's representative for such purposes.

The Board's argument based on RCW 51.52.140 is particularly undercut by RCW 51.52.150, which governs costs on appeal. This provision indicates:

> All expenses and costs incurred by the *department for board and court appeals,* including fees for medical and other witnesses, court reporter costs and attorney's fees, and all costs taxed against the department, shall be paid one-half out of the medical aid fund and one-half out of the accident fund.

(Italics ours.) RCW 51.52.150. While this section specifies the procedure for funding of court appeals by the Department, it makes no such specification for court appeals by the Board. This suggests that despite RCW 51.52.140's designation of the Attorney General as the representative of both the Department and the Board, the statute does not contemplate court appeals by the Board. RCW 51.52.140 does not therefore necessarily imply the Board's authority to bring this appeal.

Second, the Board relies on its authority to fix interest. The Act provides:

> The interest provided for in subsections (1) and (2) of this section shall accrue from the date of the department's order granting the award or denying payment of the award. The interest shall be paid by the party having the obligation to pay the award. The amount of interest to be paid shall be fixed by the board or court, as the case may be.

RCW 51.52.135(3). From this, the Board concludes it has a public service function beyond that of a purely adjudicative forum. In essence, it invokes the "executive or legislative authority" exception to the general rule against appeals by quasi-judicial agencies.

However, the notion that fixing interest is an executive or legislative rather than adjudicative function is incorrect. Fixing interest on awards is a quintessentially judicial function. Courts in Washington are authorized by statute to fix interest, RCW 4.56.110, and do so frequently. *See, e.g., Fisher Properties, Inc. v. Arden-Mayfair, Inc.,* 115 Wn.2d 364, 373-75, 798 P.2d 799 (1990); *Washington State Hop Producers, Inc. Liquidation Trust v. Goschie Farms, Inc.,* 112 Wn.2d 694, 708-09, 773 P.2d 70 (1989); *Schmidt v. Cornerstone Invs., Inc.,*

115 Wn.2d 148, 163, 795 P.2d 1143 (1990). In fact, RCW 51-.52.135(3) itself recognizes the adjudicative nature of fixing interest on workers' compensation awards, since it authorizes either the Board *or a court* to perform that function. The Board's authority to fix interest does not therefore qualify as a nonjudicial authority which would necessarily imply the statutory authority to bring this appeal.

██ Based on the foregoing analysis, there is nothing in the Board's enabling legislation from which the authority to bring an appeal such as this one can be necessarily implied. This conclusion is strongly supported by an Attorney General Opinion (AGO) issued contemporaneously with the initial enactment of RCW 51.52. In the context of determining responsibility to pay appeals costs, the AGO stated:

> Unlike regulatory bodies, the Board of Industrial Insurance Appeals is not a party to its own proceedings; nor may it initiate proceedings on its own motion, hence it is in no sense a party litigant either in its own forum or *in the superior and Supreme courts on appeal*, as is the case of many regulatory bodies.

(Italics ours.) AGO (Nov. 30, 1949), at 2. Attorney General Opinions, while not controlling, are entitled to considerable weight. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985); *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 828, 748 P.2d 1112, 7 A.L.R.5th 1086 (1988). The AGO therefore supports an interpretation of RCW 51.52 which does not allow the Board to bring appeals such as this one.

The policy of the Act also supports our conclusion. One of the most important purposes of the Act is to provide "sure and certain relief for workers". RCW 51.04.010; *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991); *Clark v. Pacificorp*, 118 Wn.2d 167, 184, 822 P.2d 162 (1991). Allowing the Board to appeal in these circumstances may in some cases increase the compensation paid to workers, but will in all cases increase the cost and delay associated with extended litigation. Indeed, one of the purposes of creating the Board was itself to reduce litigious delay. *See* Rutledge, *A New Tribunal of the State of Washington*, 26 Wash. L. Rev.

196, 198 (1951). The purposes of the Act therefore support the conclusion that RCW 51.52 does not grant the Board the authority to bring this appeal.

The Board's role as an impartial tribunal in hearing appeals from Department determinations weighs heavily against finding an implied right to appeal in RCW 51.52. In order for the Board to function properly as an appellate body, it must not have a partisan interest in the outcome of contested cases, nor should it present the appearance of such an interest. In assuming the role of advocate, the Board creates such an appearance and compromises the impartiality which is critical to its proper role. While there may be some limited utility in allowing the Board to bring appeals like this one, the public interest is better served by requiring the Board to operate within the confines appropriate to an impartial, appellate tribunal.

### C

The Board finally contends that, even if it does not have the statutory authority to prosecute this appeal, the court should nonetheless hear the appeal because Kaiser named the Board as a party in its original appeal to the Superior Court and the Board argued before that court as a party. This argument is unpersuasive.

The Board provided no relevant authority, and we are aware of none, for the proposition that an agency who otherwise has no authority to bring an appeal may be granted such a right through participation below. The one case cited by the Board, *Temple v. Feeney*, 7 Wn. App. 345, 499 P.2d 1272, *review denied*, 81 Wn.2d 1005 (1972), involved only whether the appellant qualified as an "aggrieved party" under the precursor to RAP 3.1. The question in this case is not whether the Board is "aggrieved" in order to permit review by this court, but instead whether the Board has the statutory authority to bring the appeal in the first place. The mere fact this court's doors may be open under RAP 3.1 to hear the Board's appeal does not imply the Board has the statutory authority to walk through those doors.

Moreover, if the Board is allowed to bring an appeal based solely on being named as a defendant below, the rule that administrative agencies have only the authority which they are granted by statute would be subverted. In effect, Kaiser would have granted authority to the Board which the statute denied. Private parties should not have the power to grant authority to agencies which the agencies' enabling statutes do not provide.

Given our conclusion that the Board does not have the authority to prosecute this appeal, it is unnecessary to address whether the Board properly calculated the interest on Garland Waage's workers' compensation award. On that issue, the superior court judgment stands. The appeal is dismissed.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.