[No. 55524-3-I.   Division One.   March 13, 2006.]

VESNA ERAKOVIC, *Respondent*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant*.

*Robert M. McKenna, Attorney General,* and *John R. Wasberg, Assistant,* for appellant.

*Ann Pearl Owen* (of *Ann Pearl Owen, P.S.*), respondent.

¶1 AGID, J. — The Department of Labor and Industries (L&I) appeals a superior court order requiring it to include in Vesna Erakovic's time-loss wage calculation her employer's payments for all nonretirement medical and disability benefits, including Social Security and Medicare. It argues that these employer payments are not "wages" as defined in RCW 51.08.178 and *Cockle v. Department of Labor & Industries.*[1] L&I is correct. Employer payments to government programs such as Social Security, Medicare, and Industrial Insurance are not wages because they are not consideration an employee receives from his or her employer. Even if they were, Erakovic was not receiving benefits from these programs at the time of her injury, and she fails to explain how the payments were critical to her health and survival at that time. We reverse the superior

---

[1] 142 Wn.2d 801, 806, 16 P.3d 583 (2001).

court and reinstate the Board of Industrial Insurance Appeals' decision and order.

## FACTS

¶2 On February 20, 2002, Vesna Erakovic was injured while working as a janitor for Dependable Building Maintenance of Washington (DBM) under a collective bargaining agreement (CBA). She filed a claim for time-loss compensation with L&I. L&I issued five time-loss compensation orders covering the period from February 25, 2002 to October 2, 2002. It calculated the wage rate at the time of her injury based on her gross hourly rate of $9.10 and DBM's health insurance premium payment of $252.30 per month.[2]

¶3 Erakovic appealed all five orders to the Board of Industrial Insurance Appeals (Board). She argued that the wage rate calculation should include DBM's statutorily-mandated payments for Social Security, Medicare, Industrial Insurance, and unemployment insurance. She also sought inclusion of DBM's CBA-required premium payments for pension benefits and life, accidental death and dismemberment, and nonindustrial short-term disability insurance.[3] Finally, she argued that the calculation should include holiday and vacation pay.

¶4 The industrial appeals judge (IAJ) affirmed L&I's orders. The IAJ found that L&I properly excluded all these employer payments because they were not critical to the claimant's basic health and survival as required in *Cockle*.[4] Erakovic petitioned for review, and the Board reversed and remanded L&I's orders in part. It ruled that the wage rate calculation should include holiday pay because it resulted

---

[2] Erakovic disputes the premium amount but did not appeal the superior court's ruling adopting it. Thus, the issue is not before us. RAP 2.4(a).

[3] The CBA required that DBM contribute 13 cents per hour for pension, 36 cents per month for life insurance, 12 cents per month for death and dismemberment, and $16.00 per month for short-term disability.

[4] 142 Wn.2d at 806.

in an increase in Erakovic's income. But it adopted the IAJ's analysis of all the other employer payments, concluding they were properly excluded from the wage rate calculation because they were not critical to her basic health and survival.

¶5 Erakovic then appealed to superior court. The court reversed the Board in part. It relied on *Cockle*, ruling that the "key distinction under Washington's statutory scheme is whether the anticipated benefit is for immediate health and survival rather than long-term or retirement survival." It held that wage rate calculations do not include the employer's payments for benefits that might be payable at some point in the future for retirement or economic benefits for a noninjury related layoff. But it ordered that

> *The wage rate calculation must include those payments and amounts paid directly to, or for the benefit of, the injured worker for any and all medical and disability benefits, including specifically those portions of both employer and employee Social Security and Medicare/Medicaid contributions and other contributions or payments mandated by state or federal law which provide non-retirement medical and/or disability benefits to injured workers.*

L&I appealed. Erakovic did not file a cross-appeal.

## DISCUSSION

■ ¶6 Washington's Industrial Insurance Act, Title 51 RCW, dictates that compensation rates for time-loss and loss of earning power are determined based on a worker's wage at the time of the injury.[5] "Wages" are defined by RCW 51.08.178, which provides in relevant part:

(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned.

. . . .

---

[5] RCW 51.08.178; *Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 481, 120 P.3d 564 (2005) (citing RCW 51.08.178; *Cockle*, 142 Wn.2d at 806).

The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsection (2) of this section . . . .[6]

This appeal turns on whether the employer payments included in the superior court's judgment are "other consideration of like nature received from the employer as part of the contract of hire . . . ."[7]

¶7 We review issues of statutory interpretation de novo.[8] We look first at a statute's plain language to determine legislative intent.[9] If the plain language is ambiguous, we may determine intent by reviewing the statute's legislative history.[10] We look at the statute as a whole, and our interpretation must not create an absurd result.[11]

## I. *"Consideration Received from the Employer"*

¶8 L&I argues that mandatory employer payments to government-run programs are not "consideration . . . received from the employer as part of the contract of hire."[12] It contends that taxes based on wages cannot be "wages" under any logical legal theory. Erakovic argues that under the CBA her "wages and fringe benefit plans" include "payments for

---

[6] RCW 51.08.178(1).

[7] *Id.*

[8] *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004).

[9] *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004).

[10] *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002).

[11] *Strain v. W. Travel, Inc.*, 117 Wn. App. 251, 254, 70 P.3d 158 (2003), *review denied*, 150 Wn.2d 1029 (2004).

[12] The superior court ordered that both employer and employee contributions be included in Erakovic's wage computation. L&I properly points out that employee contributions were not at issue before the Board. L&I calculated Erakovic's wage rate based on her gross hourly rate of $9.10, her wages before any mandatory state or federal deductions. Erakovic does not dispute this point, and we reverse the superior court to the extent it held otherwise.

FICA [Federal Insurance Contributions Act] taxes, workers compensation taxes, [and] Federal and state unemployment taxes . . . ."

¶9 Whether certain employer payments are "wages" or not is determined by the definition of wages in RCW 51.08.178. And under that section, the term "wages" takes on a more expansive meaning than usual.[13] Labeling something a tax, contribution, payment, or benefit does not control whether or not it qualifies as wages under the statute.[14] Similarly, including the employer's already-mandatory payments in the CBA does not automatically make them wages.

¶10 All Washington employers must contribute to the Social Security, Medicare,[15] and Industrial Insurance programs.[16] DBM had to make these payments whether the CBA required them or not, and they were not bargained for in exchange for services. Erakovic points out that state employees are entitled by statute to health care coverage as a benefit of employment,[17] contending this demonstrates that a benefit that is not bargained for may still qualify as consideration for services. However, for several reasons, employer payments, whether voluntary or mandatory, for an employee's board, housing, fuel, or health care differ from the payments at issue here.

¶11 Employers make payments for board, housing, fuel, or health care benefits directly to or on behalf of their employees, so the payments directly benefit the employees. In contrast, employer payments for Social Security, Medi-

---

[13] *See Cockle*, 142 Wn.2d at 808 (RCW 51.08.178 expressly expands the definition of wages to include "the value of at least some in-kind work 'benefits'" that would not be included under the common definition of the term).

[14] *See Gallo*, 155 Wn.2d at 488 (clarifying that *Cockle* did not consider labels determinative of whether employer payments were wages).

[15] For ease of reference throughout the opinion, we use "Medicare" to include both the Medicare and Medicaid programs.

[16] *See* 26 U.S.C. § 3111(a) (2004) (Social Security); 26 U.S.C. § 3111(b) (Medicare); chs. 51.16, 51.32, 51.48 RCW (Industrial Insurance).

[17] *See* ch. 41.05 RCW; WAC 182-12-115(5).

care, and Industrial Insurance go to government programs that provide benefits for all qualified individuals. These payments are not earmarked for a specific employer's employees even though the payment amounts are based on the employees' gross cash wages. The plain language of RCW 51.08.178 requires that any "consideration" must be received *from the employer* as part of the contract of hire. An employer's mandatory payments for Social Security, Medicare, and Industrial Insurance are not "consideration" for its employees' services and therefore not "wages" under RCW 51.08.178.[18] Even if the payments were "consideration," they are not "consideration of like nature" under *Cockle*.

## II. *The* Cockle *Test*

¶12 The issue before the Washington Supreme Court in *Cockle* was whether the value of employer-provided health care coverage is "other consideration of like nature."[19] Concluding that this statutory phrase was ambiguous, the court construed it to discern legislative intent.[20] It held that the phrase "other consideration of like nature" means "readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health

---

[18] While we don't ordinarily rely on foreign case law to construe Title 51 RCW provisions because of the unique nature of Washington's Industrial Insurance Act, *Cockle*, 142 Wn.2d at 815, there is some persuasive authority from Colorado. Before 1989, Colorado's definition of wages was like ours, " 'the reasonable value of board, rent, housing, lodging or any other similar advantage received from the employer.' " *City of Lamar v. Koehn*, 968 P.2d 164, 166 (Colo. Ct. App. 1998) (quoting 1919 Colo. Sess. Laws, ch. 210, § 47, at 716). Based on that definition, the Colorado Court of Appeals held that FICA tax payments were not included in the " 'other similar advantages' " definition of "wages." *Gregory v. Crown Transp.*, 776 P.2d 1163, 1165 (Colo. Ct. App.) (quoting *Murphy v. Ampex Corp.*, 703 P.2d 632 (Colo. Ct. App. 1985), *superseded by statute*, 1989 Colo. Sess. Laws, ch. 67, § 8-47-101(2), at 411, *as recognized in Schelly v. Indus. Claim Appeals Office*, 961 P.2d 547, 548-49 (Colo. Ct. App. 1997)), *cert. denied*, 785 P.2d 916 (Colo. 1989); *Floyd v. AMF Tuboscope, Inc.*, 817 P.2d 534, 535 (Colo. Ct. App. 1990), *cert. denied*, 1991 Colo. LEXIS 670. The court held that FICA employer payments were not bargained for and were "not an advantage received from the employer that may be assigned an economic value . . . ." *Gregory*, 776 P.2d at 1165.

[19] 142 Wn.2d at 805 (emphasis omitted).

[20] *Id.* at 808.

and survival."[21] Under this test, the health care premiums Cockle's employer paid in exchange for her labor were "[c]ore, nonfringe benefits such as food, shelter, [and] fuel" that were a component of her lost "wages."[22] The court stated that health care coverage is " 'of like nature' to 'board, housing [and] fuel' because, like those employment benefits, it is objectively critical to protecting the basic health and survival of virtually all workers."[23]

¶13 In *Gallo v. Department of Labor & Industries*, L&I excluded from workers' wage calculations their employers' contributions to various trust funds made under collective bargaining agreements.[24] Among other things, the funds provided retirement, life insurance, and disability insurance benefits. The Supreme Court said its *Cockle* test was premised in part "on the notion that a benefit is 'other consideration' if a worker cannot survive without it, even during a period of temporary disability."[25] It held that retirement benefits are not critical to the health and survival of the injured worker at the time of injury "because they are not intended to be, nor are they generally immediately available to the worker at the time of injury."[26] Thus, they are not the kind of benefits a worker must replace during the disability period to maintain health or ensure survival. As such, they are not "wages" under RCW 51.08.178.[27]

---

[21] *Id.* at 822. This is known as the *"Cockle* test." *See Gallo*, 155 Wn.2d at 483, 491.

[22] *Cockle*, 142 Wn.2d at 822-23 (emphasis omitted).

[23] *Id.* at 822-23 n.13 (alteration in original). The court also clarified that "injury-caused deprivation of the reasonable value of fringe benefits that are not critical to protecting workers' basic health and survival [does not qualify] as the kind of 'suffering' that Title 51 RCW was legislatively designed to remedy." *Id.* at 823 (emphasis omitted).

[24] 155 Wn.2d 470, 120 P.3d 564 (2005). The court also considered employers' contributions to apprenticeship training funds and the Laborers-Employers Cooperation and Education Trust. *Id.* at 474.

[25] *Id.* at 491.

[26] *Id.* at 491-92.

[27] *Id.* at 492.

¶14 The *Gallo* court also noted that the workers failed to explain how life insurance benefits are critical to the "basic health and survival" of the injured worker, rather than the injured worker's dependents, at the time of injury.[28] Nor did they explain what was included in "disability insurance," under what conditions it was available, or why it was critical to their health and survival such that they had to replace it during the disability period. Under those circumstances, the court was "compelled to conclude that these [disability] payments were properly excluded from wages."[29]

## A. *Social Security and Medicare Payments*

¶15 L&I argues that an employer's Social Security and Medicare payments are not objectively critical to protecting workers' health and survival at the time of injury. It contends that Social Security and Medicare benefits have specific requirements for eligibility and are speculative in nature. Erakovic argues that because the payments are mandatory, the resulting benefits are core, nonfringe benefits critical to workers' health and survival. She also maintains that she was eligible for some of the benefits at the time of the injury.

¶16 To qualify as "critical to the basic health and survival of the injured worker at the time of injury,"[30] benefits must be funded by the employer at the time of the injury.[31] They must also be immediately available to the worker at the time of the injury or shortly thereafter.[32] And they must be necessary to maintain the worker's health or ensure her

---

[28] *Id.* at 493.

[29] *Id.*

[30] *Id.*

[31] *Dep't of Labor & Indus. v. Granger*, 130 Wn. App. 489, 495, 123 P.3d 858 (2005) (the " 'receiving . . . at the time of injury' " limitation requires only that the " 'employer was providing consideration of like nature at the time of the injury' " (quoting *Gallo*, 155 Wn.2d at 491)).

[32] *Gallo*, 155 Wn.2d at 491-92; *Granger*, 130 Wn. App. at 497.

survival during even temporary periods of disability.[33] Erakovic has not shown that Social Security and Medicare benefits meet all three of these standards.

¶17 Erakovic's benefits were being funded at the time of the injury because her employer was making Social Security and Medicare payments at the time of the injury. But she fails to explain what the benefits of those programs are or why they are so critical to workers' health or survival that workers would be required to replace them during even temporary periods of disability. Nor does she discuss the conditions under which the benefits are available to workers or which, if any, of them was immediately available to her at the time of the injury or shortly thereafter.[34] Without more, we cannot determine whether the employer's payments for those benefits qualify as "wages" under the *Cockle* test.[35] Even if Social Security and Medicare are "core, non-fringe" benefits, they still must be critical to workers' health or survival at the time of the injury.

¶18 Further, in *Doty v. Town of South Prairie*, the Washington Supreme Court held that "speculative" benefits that are not immediately available to the worker "counsels against defining them as wages or remuneration."[36] There, pension benefits were available only after 10 years of service and the record did not show that Doty had worked the minimum 10 years to be eligible for benefits.[37] Board, housing, fuel, and the health care coverage at issue in

---

[33] *Gallo*, 155 Wn.2d at 491.

[34] Erakovic apparently concedes on appeal that Medicare benefits are available only "at some point in the future."

[35] *See Gallo*, 155 Wn.2d at 493 (court was "compelled" to exclude employer payments for disability insurance from wages because the workers failed to explain what was included in disability insurance, under what conditions it was available, or why it was critical to their health or survival). Erakovic also asserts that her injury has extended the amount of time it will take her to qualify for "some" Social Security benefits. But she again fails to explain what those benefits are or how soon after the injury she expected to qualify for them.

[36] 155 Wn.2d 527, 545, 120 P.3d 941 (2005).

[37] *Id.*

*Cockle*[38] are benefits to which the worker has immediate access at the time of the injury or shortly thereafter. A worker has access to Social Security and Medicare benefits only if she meets specific statutory requirements.[39] Employer payments for board, housing, fuel, or basic health coverage give the worker an expectation of, and access to, those benefits at the time of the injury or shortly thereafter. Employer payments to the Social Security and Medicare programs do not have the same effect. Like the retirement benefits in *Gallo*, Social Security and Medicare benefits "are not intended to be, nor are they generally immediately available to the worker at the time of injury."[40] Erakovic has not shown that she met the requirements for access to the benefits at the time of the injury or shortly thereafter.[41] DBM's Social Security and Medicare payments were properly excluded from the wage rate calculation.

## B. *Industrial Insurance Payments*

¶19 L&I argues that employer premium payments for industrial insurance benefits fail the *Cockle* test because they are not items of in-kind consideration that a worker must replace while disabled. As we said above, for employer-paid premiums to qualify as "wages" under RCW 51-.08.178 and *Cockle*, they must be critical to the worker's health or survival such that the worker must replace them during the period of disability.[42] Industrial insurance benefits are available to a worker "injured in the course of his

---

[38] 142 Wn.2d at 811.

[39] *See, e.g.*, 42 U.S.C. § 1381 (One purpose of Social Security is to provide supplemental security income "to individuals who have attained age 65 or are blind or disabled . . . ."); 42 U.S.C. § 1382 (outlining income eligibility requirements).

[40] *Gallo*, 155 Wn.2d at 491-92.

[41] We do not foreclose the possibility that a worker's wages may include payments to replace government program benefits where he or she can establish that those benefits satisfied RCW 51.08.178 and *Cockle* and were immediately available to him or her at the time of the injury or shortly thereafter.

[42] *Gallo*, 155 Wn.2d at 493.

or her employment . . . ."[43] A worker's eligibility for benefits has nothing to do with her employer's premium payments.[44] An injured worker need not replace an employer's premium payment during the period of disability because the premium payment does not impact the worker's eligibility for benefits. Thus, an employer's industrial insurance premium payments are not "wages."

¶20 Erakovic also argues that the superior court's judgment includes her employer's unemployment insurance premium payments. But the superior court specifically stated that the "wage rate calculation for an injured worker would not include sums paid . . . for economic benefits due to a non-injury-related layoff." This language shows that the superior court did not include noninjury related unemployment benefits in the wage rate calculation. Erakovic's failure to cross-appeal the superior court's judgment precludes further review of this issue.[45]

## III. *Other Payments*

¶21 Finally, Erakovic asks this court to "indicate in its opinion that [L&I] must include in [her] wage her vacation and holiday pay as well as the specific benefits this Court rules fall within Judge [Robert H.] Alsdorf's ruling so a further appeal[ ] is not required when [L&I] recalculates Erakovic's wage rate." She apparently contends that employer premium payments for union life, accidental death and dismemberment, and disability insurance are included in the superior court's order. L&I argues that this court should not consider these issues because Erakovic did not file a cross-appeal and fails to provide any support for her claims. To the extent we consider them, L&I argues the Washington Supreme Court has rejected Erakovic's contentions.

---

[43] RCW 51.32.010.

[44] *See id.*

[45] RAP 2.4(a).

¶22 We consider these issues to the extent necessary to avoid confusion in interpreting the superior court's order and judgment. First, the superior court did not reverse the Board's decision on holiday and vacation pay,[46] and we cannot do so in the absence of a cross-appeal.[47] As for the other employer payments, the *Gallo* court specifically held that payments for retirement and life insurance were not critical to the workers' basic health or survival.[48] It also held that payments for disability insurance were properly excluded because the workers failed to explain what was included in the insurance, when it was available, or why it was critical to their health and survival such that they had to replace it during the disability period.[49]

¶23 Erakovic also does not explain the terms or conditions of benefits for either the death and dismemberment or disability insurance. Nor does she provide any evidence that the benefits are critical to her health or survival such that she must replace them while she is disabled. Without more, we must conclude that these payments are not part of the superior court's order and were properly excluded from "wages" under RCW 51.08.178.[50]

¶24 We reverse the superior court and reinstate the Board's order.

Cox, C.J., and Appelwick, J., concur.

---

[46] The superior court reversed the Board decision "only to the . . . extent" specifically stated in its order and judgment.

[47] RAP 2.4(a).

[48] 155 Wn.2d at 491-92.

[49] *Id.* at 493.

[50] *See id.*