175 P.3d 1109 (2008)
Ivan FEREN&Cacute;AK, Appellant,
v.
DEPARTMENT OF LABOR & INDUSTRIES and Board of Industrial Insurance Appeals, Respondent.
No. 58878-8-I.
Court of Appeals of Washington, Division 1.
January 22, 2008.
*1110 Ann Pearl Owen PS, Seattle, WA, for Appellant.
Masako Kanazawa, Attorney at Law, Seattle, WA, for Respondent.
*1111 Johnna Skyles Craig, Spencer Walter Daniels, Office of The Attorney General, Olympia, WA, for Respondent Intervenor.
AGID, J.
¶ 1 Ivan Feren&cacute;ak, an injured worker with limited English proficiency (LEP), appeals a superior court order granting the Board of Industrial Insurance Appeals (Board) leave to intervene and the court's judgment affirming the Board's decision affirming the decisions of the Department of Labor and Industries (Department). Feren&cacute;ak challenges the Board's wage calculation, its ruling denying his request for interpreter services for his communications with counsel, and various procedural decisions. But neither the law nor the facts support his wage calculation. And, as we held in Kustura v. Department of Labor & Industries, non-indigent LEP claimants are not entitled to free interpreter services for communications with counsel outside of legal proceedings.[1] We therefore affirm the trial court and the Board. Finally, the trial court's intervention order was proper.

FACTS
¶ 2 Feren&cacute;ak is an LEP Bosnian immigrant. On March 20, 2002, he injured his right knee in the course of his employment at Travis Industries, Inc. (Travis). He applied for and the Department allowed a claim for worker's compensation benefits. The Department calculated his total gross wage as $2,199 per month, based solely on his hourly wage of $11.50 per hour for a 40 hour week and health care benefits of $175 per month. Feren&cacute;ak appealed this determination and other Department orders paying or adjusting his benefits based on this wage determination.
¶ 3 In his notices of appeal to the Board, in addition to challenging the wage determination, Feren&cacute;ak argued that chapter 2.42 RCW, chapter 2.43 RCW, and due process entitled him to interpreter services provided by the Department or the Board for all necessary communications relating to his receipt of benefits, including those with his lawyer and treating physicians. Citing the same authority, he, also asked the Industrial Appeals Judge (IAJ) to provide him with an interpreter for all hearings and communications with his attorney. The IAJ granted this request for interpreter services at hearings, but not for depositions or confidential communications between Feren&cacute;ak and his attorney.
¶ 4 After a hearing, the IAJ issued a proposed decision and order apparently affirming the Department's wage determinations, but using different values in the wage calculation reflected in the findings of fact. The IAJ valued Feren&cacute;ak's health benefits at $197.15. The IAJ also concluded that Feren&cacute;ak was not entitled to Board-provided interpreter services for communications with his attorney and that the wage calculation properly excluded "employer-paid contributions to social security, Medicare, life and/or disability insurance policies, 401(K) or Money Purchase Pension plans, or . . . industrial insurance and unemployment compensation coverage."
¶5 Feren&cacute;ak petitioned for review by the Board, challenging the wage determinations, denial of interpreter services for communications with his attorney, and failure to enforce subpoenas designed to obtain evidence showing his overtime pay, rate of pay, and year end bonus payments. The Board affirmed both the Department's original wage calculation and the IAJ's proposed decision and order, including the IAJ's finding of fact related to health care benefit costs that conflicted with the Department's original calculation. The Board also concluded that Feren&cacute;ak was not entitled to have the Board pay for interpreter services for communications with his attorney and declined to address his claim for denial of translation services at the Department level because there was no written denial of those services in the record.[2]
*1112 ¶ 6 Feren&cacute;ak appealed the Board's decision to the superior court, seeking not only reversal and remand but also reimbursement for interpreter fees from the Board or Department. The Board moved for intervention of right or permissive intervention in the alternative. The court granted the Board's motion to intervene,[3] affirmed the Board's decision, and awarded the Department $200 in statutory attorney fees. Feren&cacute;ak appeals.

DISCUSSION
¶ 7 Under RCW 51.52.115, the Board's decision is prima facie correct and the burden of proof is on the party challenging that decision.[4] The superior court acts in an appellate capacity, reviewing the Board's decision de novo, but "cannot consider matters outside the record or presented for the first time on appeal."[5] We review the superior court's decision de novo to determine whether substantial evidence supports its findings and whether its "`conclusions of law flow from the findings.'"[6] Substantial evidence is "sufficient to persuade a fair-minded, rational person of the truth of the matter."[7] "Unchallenged facts are verities on appeal."[8]
I. Intervention
¶ 8 We will reverse an intervention of right only if the trial court committed an error of law.[9] We review a decision granting permissive intervention for an abuse of' discretion.[10] Although the superior court did not disclose its basis for granting intervention, we must affirm if either kind of intervention was appropriate. To grant intervention of right under CR 24(a) the intervenor must satisfy four criteria: (1) the application is timely; (2) the applicant claims an interest that is the subject of the action; (3) the disposition will likely adversely affect the applicant's ability to Protect the interest; and (4) the applicant's interest is not adequately protected by the existing parties.[11] For permissive intervention under CR 24(b) the application need only be timely and present a common question of law or fact with the main action, though the court will also consider whether the intervention would unduly delay or prejudice the rights of the original parties.[12]
¶ 9 Here, contrary to Feren&cacute;ak's assertions, the Board's motion to intervene was timely. Because the notice of appeal did not name the Board as a party, there was no way for the Board to know that Feren&cacute;ak was seeking a judgment against it for reimbursement of interpreter fees until the Department informed it of this fact after reading Feren&cacute;ak's trial brief. The Board moved for intervention within three days after it learned that Feren&cacute;ak had essentially made the Board a party to his appeal. The Board's interest in not paying a judgment for reimbursement of interpreter fees is obvious. And, while not the only issue on appeal, the extent to which the Board must provide interpreter services to LEP claimants was the central claim. What is less clear on this *1113 record is why the Board's interest would not be adequately protected by the Department. But, while this failing may mean that the Board was not entitled to intervention of right, nothing suggests that the superior court abused its discretion by allowing, permissive intervention.[13]
¶ 10 Feren&cacute;ak's argument against intervention relies on the holding in Kaiser Aluminum & Chemical Corp. v. Department of Labor & Industries that the Board generally cannot appeal adverse superior court decisions because it is a quasi-judicial agency.[14] But Kaiser is distinguishable. There, the Board sought to appeal a superior court decision reversing its earlier ruling.[15] Here, the Board did not appeal the superior court decision; it merely sought to intervene in a proceeding that might have adverse legal and financial implications. Further, Kaiser does not stand for the principal that the Board can never appeal a decision by the superior court. In fact, the court in Kaiser explained that one exception to the general rule against allowing a Board appeal is that quasi-judicial agencies may appeal decisions about their own procedures. [16] Here, the Board sought to intervene in an appeal challenging its internal procedures; that is, whether it must provide free interpreter services to all LEP benefits claimants both for legal proceedings and for confidential communications with counsel. Kaiser does not support Feren&cacute;ak's arguments against Board intervention.
¶ 11 City of Milford v. Local 1566,[17] a Connecticut Supreme Court case cited in Kaiser for the proposition that an appeal by a quasi judicial body concerning its own procedures is proper,[18] supports the superior court's decision to allow intervention. There, the court upheld a lower court's decision allowing intervention by the Board of Mediation and Arbitration in an action to determine whether its arbitrators must take an oath before arbitrating every dispute, reasoning that the board's "significant interest" in protecting the validity of its procedures justified' intervention.[19] Here, the issue of whether the Board must provide free interpreter services to all LEP claimants is similarly procedural and potentially has significant budgetary impacts. The Board has a similar interest in seeing that the issue is resolved in its favor. We hold that the superior court did not err by allowing the Board to intervene.
II. Wage Calculation
A. Health Care Benefits
¶ 12 Under RCW 51.08.178(1) wage calculation for time-loss benefits includes the value of employer-paid health care premiums.[20] Feren&cacute;ak argues that the Board undervalued his health care benefits because it erroneously found his employer paid $175 monthly even though a human resources manager testified that benefit payments were $202.84 per month. This is a misstatement of the record. The Board actually found the employer paid $197.15 monthly for health care coverage. To support his contention that the Board undervalued his benefits, Feren&cacute;ak points to testimony from Travis' human resources manager where he mistakenly stated that medical coverage cost $158.84 and dental coverage cost $44.26.[21] But he almost immediately corrected his testimony, explaining that he had mistakenly looked at what an employee would have to pay for the same *1114 coverage under COBRA. We hold that the Board did not undervalue Feren&cacute;ak's health care benefits.[22]
B. Holiday/Vacation Pay
¶ 13 Feren&cacute;ak argues that his earned, but not taken, holiday and vacation days should be considered in his wage calculation based on this court's holding in Fred Meyer, Inc. v. Shearer that paid vacation and holidays should be included in calculating monthly wages under RCW 51.08.178(1).[23] But Shearer is distinguishable because there the employer sought to subtract paid vacation and holidays, already taken, from the injured worker's monthly wage calculation, which would have resulted in the workers being under-compensated.[24] Here, Feren&cacute;ak seeks additional monthly income based on vacation or holidays he could have taken in the future.. Adding these days on to his monthly wage calculation would clearly result in overcompensation. This is the functional equivalent of asking for compensation based on work he would have done in the future, had he not been injured, for which he would not be entitled to compensation because RCW 51.08.178(1) limits the wage calculation to monthly wages the worker is receiving at the time of the injury.[25] The Board did not err in refusing to consider unused leave time in its wage calculation.
C. Bonus
¶ 14 Feren&cacute;ak contends that the Board improperly excluded his yearly profit sharing bonus in its wage calculation. RCW 51.08.178(3) provides;
If, within the twelve months immediately preceding the injury, the worker has received from the employer at the time of injury a bonus as part of the contract of hire, the average monthly value of such bonus shall be included in determining the worker's monthly wages.
Feren&cacute;ak was injured in March 2002. He claims he received a yearly bonus in December 2001, but there is no evidence of this bonus in the record and he cites none in his opening brief. In his reply brief, he claims that exhibit 14, an email, shows the December 2001 bonus. But this exhibit is not included in the record, and it was admitted during the course of a discussion about the 2002 bonus, suggesting it likely did not reference a 2001 bonus.[26] He also argues that had the IAJ enforced certain subpoenas, there might have been evidence of a 2002 bonus. This is irrelevant: assuming that Trayis pays annual bonuses at the same time every year, a December 2002 bonus would not qualify for inclusion in the wage calculation because it was not earned in the year preceding the injury.
D. Employer Payments for Government-Mandated General Fund Benefits
¶ 15 Feren&cacute;ak argues that the Board should have `considered his employer's contributions to Social Security, Medicare, Industrial Insurance, and unemployment compensation in the wage calculation. ROW *1115 51.08.178(1) explains the wage calculation and provides in relevant part:
The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire . . .
We have already determined that Social Security, Medicare, and Industrial Insurance payments cannot be considered in calculating wages under RCW 51.08.178(1).[27] In Erakovic v. Department of Labor & Industries, we explained that these kinds of government-mandated general fund payments are not wages as defined by RCW 51.08.178(1):
Employers make payments for board, housing, fuel, or health care benefits directly to or on behalf of their employees, so the payments directly benefit the employees. In contrast, employer payments for Social Security, Medicare, and Industrial Insurance go to government programs that provide benefits for all qualified individuals. These payments are not earmarked for a specific employer's employees even though the payment amounts are based on the employees' gross cash wages. The plain language of RCW 51.08.178 requires that any "consideration" must be received from the employer as part of the contract for hire. An employer's mandatory payments for Social Security, Medicare, and Industrial Insurance are not "consideration" for its employees' services and therefore not "wages" under RCW 51.08.178. Even if the payments were "consideration," they are not "consideration of like nature". . . . [28]
¶ 16 In Erakovic, we declined to consider whether unemployment compensation, another government-mandated general fund employer payment, should be considered in the wage calculation because the injured worker failed to cross-appeal on this issue.[29] Feren&cacute;ak provides no argument or authority to distinguish unemployment compensation payments from the other payments we considered and refused to include in the wage calculation in Erakovic. Instead, he claims that Erakovic was wrongly decided and implicitly overruled by Department of Labor & Industries v. Granger.[30] But Granger did not address whether government-mandated employer payments to general funds are "consideration of like nature" under RCW 51.08.178(1). In Granger, the Washington Supreme Court merely considered whether payments made on behalf of an individual employee into a health care trust fund are wages received at the time of the injury when the injured employee is not yet eligible to receive the health care benefits.[31] The court did not need to ask whether employer payments made for health care are "consideration of like nature" because it had already answered that question affirmatively in Cockle v. Department of Labor & Industries.[32] And, contrary to. Feren&cacute;ak's assertions, Granger is not in conflict with Erakovic. Like the decision in Granger, we determined in Erakovic that employer payments made during the term of employment were received at the time of injury.[33] Because Granger does not require us to reconsider our holding in Erakovic and Feren&cacute;ak fails to explain why a different analysis should apply to employer payments for unemployment compensation, we affirm the Board's decision to exclude these payments from the wage calculation.
E. IAJ's Evidentiary Rulings
¶ 17 Feren&cacute;ak claims that the IAJ violated WAC 263-12-045 by failing to enforce subpoenas, requiring him to obtain testimony of a health insurer by perpetuation deposition, and by failing to elicit additional testimony necessary to valuing his wages. Because he provides no citation to the record proving these alleged violations occurred or *1116 authority explaining why these alleged actions constitute reversible error, we decline to consider this argument under RAP 10.3.[34]
III. Scope of Review
¶ 18 The "Board's scope of review is limited to those issues which the Department previously decided."[35] RCW 51.52.060 governs the procedure for appealing the Department's decisions and requires a worker seeking review of a Department decision to file a notice of appeal within 60 days of receiving a copy of the decision. RCW 51.52.050 requires the Department to serve a written copy of any decision it makes on the injured worker. Read together, these statutes imply that for a Department decision to be appealable it must be in writing and served on the worker.
¶ 19 The Board refused to consider arguments on appeal related to the Department's English-only communications with Feren&cacute;ak because the record contained no written copy of a decision by the Department to communicate in English only. Feren&cacute;ak argues that the Department's repeated use of Englishtonly communications when it knew of his LEP status should be considered an appealable decision within the meaning of RCW 51.52.060 despite the absence of, a written decision. Because he provides no authority for this assertion, we decline to consider his argument[36] and affirm the Board's conclusion that, in the absence of a written decision, it lacked jurisdiction to review these informal Department actions.[37]
IV. Interpreter Services
¶ 20 Feren&cacute;ak contends that the IAJ's decision to provide him with interpreter services only for testimony at the hearing, but not for communications with counsel or perpetuation depositions, violated chapter 2.43 RCW, public policy as expressed by that chapter, and constitutional due process and equal protection. We addressed similar interpreter issues in Kustura and held that neither chapter 2.43. RCW nor constitutional due process or equal protection considerations entitle non-indigent LEP injured workers to free interpreter services for communications with counsel outside of legal proceedings for which an interpreter has already been appointed during an appeal of the Department's benefits calculation.[38] Nothing about the facts of this appeal requires a different result.[39] Like the LEP claimants in Kustura, Feren&cacute;ak has not shown he was prejudiced by any denial of interpreter services for communications with counsel during proceedings. And, because Feren&cacute;ak failed *1117 to petition the Board for review of the IAJ's refusal to provide interpreter services for perpetuation depositions, that issue is riot properly before us. We therefore decline to address it.[40]
¶ 21 For the first time on appeal, Feren&cacute;ak raises several new arguments to support his claim for additional interpreter services. He contends that denying his request for additional interpreter services violates (1) Washington's Law Against Discrimination, chapter 49.60 RCW, (2) Executive Order 13166, (3) Title VI of the Civil Rights Act of 1964,[41] (4) WAC 263-12-020, (5) WAC 263-12-117, and (6) impermissibly shifts the costs of seeking benefits onto the injured LEP worker. Generally, we will not consider issues raised for the first time on appeal.[42] Further, RCW 51.52.104 states that a petition for review of an IAJ decision must "set forth in detail" the grounds for appeal and failure to do so results in waiver of the issue. Because Feren&cacute;ak failed to raise these new issues below, we decline to consider them on appeal. On this record, we hold that Feren&cacute;ak was not entitled to free interpreter services for communications with counsel.
V. Statutory Attorney Fees
¶ 22 The superior court awarded the Department $200 in statutory attorney fees under RCW 4.84.030. Feren&cacute;ak argues that this is an improper award of attorney fees under RCW 51.52.130, which states when attorney fees should be awarded in an industrial insurance appeal. But these two provisions do not deal with the same kind of attorney fees. RCW 51.52.130 allows for an award of actual attorney fees incurred by an injured worker or employer on appeal to the superior or appellate court. In contrast, RCW 4.84.030 allows the superior court to award costs to the prevailing party, and under RCW 4.84.080, those costs include a nominal statutory attorney fee award of $200. RCW 51.42.140 states that the rules of civil procedure apply in all industrial insurance appeals to the superior court, and the Washington Supreme Court has held that this provision allows the court to impose statutory attorney fees under RCW 4.84.030.[43] Thus, we affirm the superior court's award of costs in the form of statutory attorney fees to the Department.
¶ 23 Feren&cacute;ak also requests attorney fees on appeal. Because he has not prevailed on any issue, we deny his request.
¶ 24 We affirm.
WE CONCUR: BAKER and DWYER, JJ.
NOTES
[1] No. 57445-1-I, ___ Wash.App. ___, ___, 175 P.3d 1117, 2008 WL 203024 (Wash.Ct.App. Jan. 22, 2008).
[2] The Board did not address whether Feren&cacute;ak might be entitled to Board-provided interpreter services for depositions because Feren&cacute;ak did not raise that issue in his petition for review.
[3] The order granting intervention does not specify whether it is permissive or of right.
[4] Ruse v. Dep't of Labor & Indus., 138 Wash.2d 1, 5, 977 P.2d 570 (1999) (citing Raysten v. Dep't of Labor & Indus., 108 Wash.2d 143, 146, 736 P.2d 265 (1987)).
[5] Sepich v. Dep't of Labor & Indus., 75 Wash.2d 312, 316, 450 P.2d 940 (1969).
[6] Ruse, 138 Wash.2d at 5, 977 P.2d 570 (quoting Young v. Dep't of Labor & Indus., 81 Wash.App. 123, 128, 913 P.2d 402, review denied, 130 Wash.2d 1009, 928 P.2d 414(1996)).
[7] R & G Probst v. Dep't of Labor & Indus., 121 Wash.App. 288, 293, 88 P.3d 413 (citing Hamel v. Employment Sec. Dep't, 93 Wash.App. 140, 144, 966 P.2d 1282 (1998), review denied, 137 Wash.2d 1036, 980 P.2d 1283(1999)), review denied, 152 Wash.2d 1034, 103 P.3d 201 (2004).
[8] Willoughby v. Dep't of Labor & Indus., 147 Wash.2d 725, 733 n. 6, 57 P.3d 611 (2002) (citing State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994)).
[9] Westerman v. Cary, 125 Wash.2d 277, 302, 892 P.2d 1067 (1994).
[10] Spokane County v. State, 136 Wash.2d 644, 650, 966 P.2d 305 (1998) (citing Ford v. Logan, 79 Wash.2d 147, 483 P.2d 1247 (1971)).
[11] Id. at 649, 966 P.2d 305.
[12] Vashon Island Comm. for Self-Gov't v. State Boundary Review Ed., 127 Wash.2d 759, 765 n. 4, 903 P.2d 953 (1995).
[13] See Vashon Island, 127 Wash.2d at 765, 903 P.2d 953(permissive intervention is proper even if the iintervenor's rights were arguably represented by one of the original parties).
[14] 121 Wash.2d 776, 781, 785, 854 P.2d 611 (1993).
[15] Id. at 780, 854 P.2d 611.
[16] Id. at 782, 854 P.2d 611.
[17] 200 Conn. 91, 510 A.2d 177 (1986).
[18] Kaiser, 121 Wash.2d at 782, 854 P.2d 611.
[19] City of Milford, 510 A.2d at 180.
[20] Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 823, 16 P.3d 583 (2001).
[21] It is unclear where Feren&cacute;ak gets the $202.84 figure, since adding the two figures he presumably relies on together results in a total benefits payment of $203.10. Feren&cacute;ak relies on different numbers yet again in his reply brief, where he states, without basis, that the employer-paid insurance premiums equaled either $202.26 or $202.40.
[22] In fact, all the evidence suggests that the Board overvalued Feren&cacute;ak's health care benefits when it found they totaled $197.15. Both the current and former human resources managers at Travis testified that employer-paid health care premiums for medical and dental coverage combined equaled. $176 monthly. But, because the Department does not challenge the higher award, we need not consider it further.
[23] 102 Wash.App. 336, 339-40, 8 P.3d 310 (2000), review denied, 143 Wash.2d 1003, 21 P.3d 290 (2001).
[24] Id. at 340; 8 P.3d 310.
[25] In his reply brief, Fereheak cites Kilpatrick v. Department of Labor & Industries for its statement that "the purpose of worker's compensation benefits is to reflect future earning capacity rather than wages earned in past employment." 125 Wash.2d 222, 230, 883 P.2d 1370, 915 P.2d 519 (1994), But that statement was made in the context of determining whether the date of exposure or the date of the manifestation of the disease should be considered the time of injury for purposes of calculating benefits in an asbestosis case where the benefit schedule changed between the two dates. Id. This does not imply that speculative potential future earnings should be taken into consideration for wage calculations. On the contrary, Kilpatrick highlights the fact that the time of injury is the relevant date from which all future earning capacity is calculated.
[26] Feren&cacute;ak's counsel did not designate the exhibits admitted before the IAJ as part of the record on appeal.
[27] Erakovic v. Dep't of Labor & Indus., 132 Wash.App. 762, 776, 134 P.3d 234 (2006).
[28] 132 Wash.App. 762, 769-70, 134 P.3d 234 (2006) (footnote omitted).
[29] Id. at 775, 134 P.3d 234.
[30] 159 Wash.2d 752, 153 P.3d 839 (2007).
[31] Id. at 759, 153 P.3d 839.
[32] 142 Wash.2d 801, 823, 16 P.3d 583 (2001).
[33] 132 Wash.App. at 772-73, 134 P.3d 234.
[34] See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Although not readily discernible from his brief, Feren&cacute;ak is likely referencing the IAJ's decision not to allow him to recall one of the human resources managers after his counsel realized that she had not elicited sufficient testimony from him or obtained all the documents she intended to obtain related to the annual profit sharing bonus. Nothing in the record suggests this was an abuse of discretion by the IAJ. In fact, the IAJ told counsel that she could obtain any additional evidence from the witness by deposition. There is no evidence in the record to suggest that she tried to do so.
[35] Hanquet v. Dep't of Labor & Indus., 75 Wash. App. 657, 661, 879 P.2d 326 (1994) (citing Lenk v. Dep't of Labor & Indus., 3 Wash.App. 977, 982, 478 P.2d 761 (1970)), review denied, 125 Wash.2d 1019, 890 P.2d 20 (1995).
[36] See RAP 10.3(a)(6); Cowiche Canyon Conservancy, 118 Wash.2d at 809, 828 P.2d 549.
[37] We are concerned that the Department may avoid review of these or similar decisions simply for refusing to reduce them to writing. In future cases, the Department should supply the claimant with written reasons for refusing to recognize his or her LEP status to provide a basis for review in an appropriate case.
[38] No. 57445-1-I, ___ Wash.App. ___, ___, 175 P.3d 1117, 2008 WL 203024, slip op. at 19-22, 25-28 (Wash.Ct.App. Jan. 22, 2008).
[39] Feren&cacute;ak raises an additional equal protection issue not raised in Kustura, claiming that the Board's decision not to provide him with interpreter services impermissibly infringed on his fundamental right to travel. We decline to consider this issue because he fails to provide sufficient argument or authority under RAP 10.3(a)(6). But we note that this argument would probably fail because he appears to argue that the failure to provide interpreter services infringed on his right to travel from his country of origin to the United States. The fundamental right to travel refers only to interstate, not international, travel. See Haig v. Agee, 453 U.S. 280, 306, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981).
[40] See Sepich, 75 Wash.2d at 316, 450 P.2d 940.
[41] 42 U.S.C.2000d, 88 P.L 352.
[42] RAP 2.5(a).
[43] Black v. Dep't of Labor & Indus., 131 Wash.2d 547, 557-58, 933 P.2d 1025 (1997) (citing Allan v. Dep't of Labor & Indus., 66 Wash.App. 415, 422-23, 832 P.2d 489 (1992)).